UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DELEISHA RAECHELLE OWENS, )<br>)<br>Defendant. ) | No. 6:15-CR-29-REW-HAI-2<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 176), the Court considers reported violations of supervised release conditions by Defendant Deleisha Owens.

District Judge Thapar entered Judgment against Defendant in October 2016 on Defendant's plea to one count of conspiracy to distribute a mixture or substance containing methamphetamine. D.E. 157 (plea agreement); D.E. 159 (Judgment). Defendant was sentenced to 47 months of imprisonment followed by five years of supervised release. D.E. 159 at 2-3. The case was later reassigned to Judge Wier. D.E. 165. Defendant was released on August 7, 2019.

It was not long before Defendant was caught using drugs. As Judge Wier explained in an August 14, 2019 order:

> On August 9, 2019, supervising USPO Tyler submitted to the Court a completed Report on Offender Under Supervision (Probation Form 12A), stating that Owens admitted to a positive urinalysis and reported a desire to receive residential addiction treatment. Officer Tyler requested that Owens be permitted to enter the Chrysalis House, but that the Court otherwise take no action. He noted that Chrysalis would have a bed available for Owens in roughly a week. The Court approved the USPO's no-action request that same day (August 9, 2019).

> On August 14, 2019, Officer Tyler informed the Court that Owens, after self-reporting as directed to the Chrysalis House, there tested positive for methamphetamine and opiate use. Owens admitted to controlled substance use in the interim period between the August 9 positive urinalysis and the August 14 Chrysalis House arrival. Given the immediate availability of a bed for Owens at Chrysalis, Officer Tyler recommended a no-action response to this new evident violation to permit her to receive needed treatment for her admitted addiction. The Court, after thoroughly discussing the situation and defendant-specific factors with Officer Tyler and considering the available courses of action, again approved the USPO's no-action response. The Court, based on Officer Tyler's representations, is hopeful that the Chrysalis House treatment will allow Owens to overcome her addiction issues and avoid further supervision violations; if she does violate again, the Court will not hesitate to issue an arrest warrant. Further, the chosen steps here do not foreclose pursuit of prior listed violations.

D.E. 167 at 2-4. The two violation reports were filed in the record under seal. D.E. 168.

Defendant remained in the Chrysalis House program, which she successfully completed on January 17, 2020.

**I.**

On October 6, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges five violations. According to the Report,

> On September 30, 2021, Owens left a voicemail for this officer advising she was arrested on September 21, 2021, and remained in custody until her release on bond on September 29, 2021. Owens was charged in Warren County District Court, Case Number 21-F-01081, and charged with the following:
>
> 1) Receiving Stolen Property $10,000 or More – Violation of K.R.S. § 514.110 – a Class D felony
>
> 2) Trafficking in Controlled Substances, 3rd Degree, 1st Offense (Greater Than or Equal to 20 but Less Than 120 Dosage Units Drug Unspecified) - Violation of K.R.S. § 218A.1414 – a Class A misdemeanor
>
> 3) Possession of Controlled Substances, 1st Degree, 1st Offense (Methamphetamine) - Violation of K.R.S. § 218A.1415 – a Class D felony

2

> 4) Drug Paraphernalia – Buy/Possess - Violation of K.R.S. § 218A.500(2) – a Class A misdemeanor
>
> 5) Carrying a Concealed Deadly Weapon - Violation of K.R.S. § 527.020 – a Class A misdemeanor

> Owens was arrested with Scott Kadik and Roger Woolum, both multi-convicted felons. The defendant was the passenger in a stolen vehicle where officers located an unknown quantity of suspected methamphetamine, suspected Xanax pills, drug paraphernalia, brass knuckles, digital scales, and $7,367 on Woolum.

Public court records show that charges 1, 2, and 5 above were dismissed. Charges 3 and 4 were indicted in Warren Circuit Court case # 21-CR-01264-003.

Based on the September 21, 2021 arrest, **Violation #1** charges a violation of the condition that Defendant "shall not commit another federal, state, or local crime." Because the state charges include a felony (meth possession), this is a Grade B violation.

Based on Defendant's arrest in the Western District of Kentucky, **Violation #2** charges a violation of the condition that Defendant "not leave the judicial district without permission of the court or probation officer." According to the Report, Defendant did not have permission to travel to Warren County. This is a Grade C violation.

**Violation #3** charges a violation of the condition that prohibits Defendant from associating "with any person convicted of a felony, unless granted permission to do so by the probation officer." As noted in the arrest documents, Defendant was arrested with Scott Kadick and Roger Woolum. According to the Report, both men are felons, and Defendant had not obtained permission to associate with either of them. This is a Grade C violation.

According to the Report, "On October 4, 2021, Owens reported to the probation office as directed. She submitted a urine sample which was negative for all substances, but upon further questioning, admitted to consuming methamphetamine on September 20, 2021. She signed an

admission form confirming use."  Based on this admitted meth use, **Violation #4** charges a Grade C violation of the condition that prohibits using any controlled substance except as prescribed by a physician.

Also based on Defendant's admitted meth use, **Violation #5** charges another violation of the condition that Defendant "shall not commit another federal, state, or local crime.  Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #5 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On December 27, 2021, the Court conducted an initial appearance pursuant to Rule 32.1.  D.E. 173.  The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing.  At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release.  *Id*.  Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal.  *Id*.

At the final hearing on February 7, 2022, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 177.  The government moved to dismiss Violation #1.  Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #2, #3, #4, and #5.  *Id.*  For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each of these four violations as described in the Report.  The United States thus established violations #2-5 under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute an unspecified quantity of methamphetamine mixture, a Class C felony. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a 24-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violations #2, #3, and #4 and a Grade B violation for Violation #5. Given Defendant's criminal history category of II (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is six to twelve months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's drug trafficking conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

## III.

At the final hearing, the parties announced an agreed recommended disposition—revocation with six months of incarceration and an unspecified amount of supervised release, with no new conditions. The parties noted that Defendant was interested in further treatment at a "Sober Living" facility. The Court accepts the parties' proposed bottom-of-the-Guidelines penalty.

According to the government, a within-Guidelines sentence is appropriate because Defendant's meth use tracks the underlying conviction, which also concerned meth. According to the government, Defendant's criminal history is relatively low. She has two shoplifting convictions, which were driven by her drug addiction. The government argued that a bottom-Guidelines sentence was warranted by Defendant's acceptance of responsibility. She called her probation officer to report her arrest. She also confessed her September methamphetamine use even though her specimen tested negative. Defendant also volunteered that she was interested in additional treatment, particularly something in another area, away from the people here who encourage her to use drugs.

As for additional supervision, the government suggested another full five-year term would not be necessary. We would know within about a year if she was capable of compliance.

The defense agreed with the government's presentation. The defense stressed that Defendant called in to report her arrest, she admitted her drug use without a positive test, and she asked to go to "Sober Living" *after* serving her time on the violations. This is her first revocation. At age 31, she hopes to start her life over and "get away from these people" who draw her back into drug use.

The Probation Officer explained that "Sober Living" does not provide inpatient treatment and its programs are not confined to a certain amount of time. But Chrysalis House would take Defendant back and there are other treatment options that can be explored upon release if "Sober Living" is found not to be available or appropriate.

Defendant addressed the Court. She said she wants a different environment and can live a better life in Lexington. She said she could work again at UK hospital, and there are other opportunities there. She said she finds nothing but drugs in Laurel County and Barbourville.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Based on the description in his PSR, Defendant was stopped by law enforcement when she and a codefendant were bringing 346 grams of meth to Kentucky to sell. This was her third such trip. At the time, Defendant was a daily user of methamphetamine and hydrocodone. The concern here is that returning to drug use could lead to additional involvement in trafficking. Defendant also received an original sentence (47 months) well below her Guidelines Range of 78-97 months. This counsels against further leniency.

The Court next considers Defendant's history and characteristics. In her favor, she rapidly took responsibility for this violation conduct. She has a determination to change. But Defendant should keep in mind that if she decides to seek drugs, she can find them anywhere. Going to another city is not a magic bullet against her problems.

Another consideration is the need for additional training and treatment. Defendant has already had treatment, and she seeks more. The parties agree that the existing conditions will allow the probation officer to arrange for appropriate treatment upon Defendant's release.

Two other factors are the need to protect the public and the need to deter criminal conduct. The revocation sentence is designed to keep Defendant physically away from drug use (which for her is a felony) and to provide a wake-up call against criminal activity in the future. Defendant is warned that the meth available now is especially potent (and often laced with dangerous fentanyl).

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's

trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Here, Defendant's use of drugs is inherently dangerous, given her history of becoming involved in trafficking. But the severity of the trust breach is undermined by her swift honesty with Probation. Defendant should continue being candid, especially as she is evaluated for future treatment.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon the government's motion, Violation #1 be dismissed.
2. That, upon her stipulation, Defendant be found guilty of Violations #2-5.
3. Revocation with a term of imprisonment of six months, followed by twelve months of supervised release under the same conditions previously imposed. The Court further recommends that, upon release, the Probation Office evaluate Defendant for placement in a Sober Living program, or similar program, if available.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for

9

consideration, de novo, by the District Judge. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 7th day of February, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge